### UNITED STATES v. ONE BAG OF CRUSHED WHEAT.

(District Court, S. D. New York. October 10, 1908.)

1. CUSTOMS DUTIES (§ 130*)—FORFEITURE—FALSE STATEMENT.

Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), prescribes forfeiture for the entry of imported merchandise by means of any "false or fraudulent * * * paper, or by means of any false statement, written or verbal." Held, that this covers a case where a person who is consignee falsely describes himself as the owner of the merchandise.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296, 297; Dec. Dig. § 130.*]

2. CUSTOMS DUTIES (§ 130*)—FRAUDULENT PACKING—INTENT.

Laces and silks were packed and invoiced as preserved fruits, but before entry the invoice was corrected to show the true nature and value of the goods so concealed. Held, that if the original plan under which the goods were shipped and brought into the United States, as shown by the manner in which they were packed and invoiced, showed a purpose on the part of the consignee to smuggle the goods, they were forfeitable, notwithstanding said correction of the invoice.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296, 297; Dec. Dig. § 130.*]

3. CUSTOMS DUTIES (§ 130*)—FALSE INVOICE—FALSE DECLARATION OF SHIPPER.

Where the foreign shippers of goods to the United States, who were the agents of the merchandise, attempt to make entry of the merchan-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dise by a false invoice and a false declaration of shipment, the goods are liable to forfeiture.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296, 297; Dec. Dig. § 130.*]

4. CUSTOMS DUTIES (§ 130*)—HOLDER OF BILL OF LADING—ESTOPPEL.

Customs Administrative Act June 10, 1890, c. 407, § 1, 26 Stat. 131 (U. S. Comp. St. 1901, p. 1886), provides that the holder of a bill of lading "shall be deemed the consignee." and that for the purpose of the act imports shall be "deemed and held to be the property of the person to whom the merchandise may be consigned." *Held*, that this simply provides that the government may act on the faith of the bill of lading, but is not precluded from going behind it to show the facts, in order to determine the forfeit ability of importations.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296, 297; Dec. Dig. § 130.*]

5. CUSTOMS DUTIES (§ 133*)—CONSPIRACY—FAILURE TO NAME CO-CONSPIRATOR.

An allegation of a cause of forfeiture on the theory of conspiracy is inadequate, which does not name some one as conspiring with the party charged with the conspiracy.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 321; Dec. Dig. § 133.*]

6. CUSTOMS DUTIES (§ 133*)—BURDEN OF PROOF.

In proceedings for the forfeiture of imported merchandise, the burden of proving that the importation was legal rests upon the claimant.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 324; Dec. Dig. § 133.*]

In Rem.    On information for the forfeiture of imported merchandise.

The libel of information alleged five causes of forfeiture against the merchandise, which was seized by the collector of customs at the port of New York, February 5, 1907. The statutory provisions involved in the case are as follows:

"Section 1. * * * That all merchandise imported into the United States shall, for the purpose of this act, be deemed and held to be the property of the person to whom the merchandise may be consigned; but the holder of any bill of lading consigned to order and indorsed by the consignor shall be deemed the consignee thereof." Extract from section 1, Customs Administrative Act 1890 (Act June 10, 1890, c. 407, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886]).

"Sec. 9. That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from the person making the entry, shall be forfeited, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates." Extract from section 9, Customs Administrative Act 1890.

"Sec. 3082. If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall

be forfeited." Extract from section 3082, Revised Statutes (U. S. Comp. St. 1901, p. 2014).

In the first cause of forfeiture it was stated that A. Petrakian, being the consignee and agent of the merchandise, made a false entry of the same by declaring that he was the owner of the merchandise. The third cause of forfeiture alleged that the European shippers of said merchandise, being agents of said merchandise, made and attempted to make entry of said merchandise by means of a false and fraudulent consular invoice and by means of a false and fraudulent declaration of shipper. The fifth cause of forfeiture alleged that Petrakian fraudulently and knowingly imported and brought the merchandise into the United States contrary to law, in that (a) he entered the said merchandise by means of a declaration of owner, instead of a declaration of consignee; (b) he brought the said merchandise into the United States pursuant to a conspiracy to defraud the United States; (c) he brought the said merchandise into the United States packed in an unlawful and fraudulent manner—that is, with divers lace and silk articles packed in said merchandise so that they were hidden and concealed in packages of butter, wheat, and preserved vegetables with intent to conceal from the United States the importation of said silk and lace articles.

At the trial the evidence showed that on December 8, 1906, A. Petrakian made an entry of 10 sacks of crushed wheat, 16 cases of preserved vegetables, 4 cases of butter, 4 okes of lace, and 105 scarfs. This entry contained a correct description of all the merchandise contained in the importation. With this entry there was filed a consular invoice of these goods, which omitted any mention of the lace articles and the scarfs. The triplicate of this consular invoice had been received from the consul by the collector of the port some time prior to the date of entry. Annexed to the consular invoice was a paper, signed by A. Petrakian, stating that there were contained in 2 of the 30 cases 4 okes of lace and 105 scarfs. This paper was prepared in the office of the customs broker. The lace and the scarfs were packed in the cases containing preserved vegetables, in tin cans exactly similar to the cans containing the preserved vegetables, and were placed in two of the cases with other cases of vegetables. A considerable amount of evidence was introduced tending to show that the merchandise was packed, and the consular invoice was made out, with the intention of smuggling the lace and scarfs through the customhouse, and that this intention was abandoned only upon the detection of other similar frauds.

Francis W. Bird, Asst. U. S. Atty.
Arthur M. King, for claimant.

HOLT, District Judge (charging the jury). The information filed by the district attorney contains five counts, each of which states a ground upon which it is claimed that the goods which have been seized in this proceeding should be forfeited to the government. The first count charges that Petrakian was not the owner of the goods, and that in making his declaration he stated that he was the owner, which was in violation of the statutes of the United States in reference to importing goods. If a person is a consignee, and not an owner, it is his duty to say he is the consignee, and he violates the law if he declares himself to be the owner when he is not. The second count charges a violation of the law in an attempt to make the entry of these goods by a false invoice. The third count charges that Gennouy & Co., the agents of the firm at Damascus, attempted to make an entry by a false invoice and a false declaration of shipment. The fourth count charged that willful false statements were made here by Petrakian in importing the goods; and the fifth count charged a conspiracy to defraud the United States and that the goods were packed in such a way as to endeavor to conceal those which were dutiable from the officers of the government.

Now, under the customs laws, if either of those things are willfully done in an importation, the goods are forfeited. The evidence in this case, in regard to the goods which have been seized, shows that there was an entry of merchandise made in the name of Petrakian on December 8th. The goods imported were 10 packages of crushed wheat, marked "J. D.," 1 to 10, inclusive, 16 packages of preserved fruits, marked "J. D.," 11 to 26, inclusive, and 4 packages of butter, marked "J. D.," 27 to 30, inclusive, so that the numbers ran down from 1 to 30. These packages contained what they purported to contain, except Nos. 19 and 24. Both of them, purporting to be packages of preserved fruits, in fact contained a lot of lace and a lot of silk scarfs. They were packed in the way which has been shown, in the center of these articles of goods, in such a way that mere inspection of the outside would not detect them, and the probability is ten to one that, if the government had pursued the ordinary course of sending one in ten of these packages to the public stores for examination, the fraud would not have been discovered. It might have been discovered, of course. The wrong packages might have gone to the public stores for examination. But there were 30 packages, two of which contained dutiable articles on which the duty was large in amount, carefully packed in the center of the packages, so that they would not be noticed unless those particular packages were opened.

Now, the first count of the indictment is that Petrakian was not the owner of the goods. The government claims in this case that a man named Marrash was the owner, and that Petrakian was merely his agent. In respect to this claim the proofs show that Marrash, on December 14th, sold 5 of these packages of wheat having some of the marks—from 1 to 10—to a man named Dibs, and that Petrakian paid on the 9th, or a day or two afterwards, at the proper time, $364.23 for the duties and the charges of his broker; and on the same day Marrash drew a check for the same amount against his bank. From this evidence the government asks you to draw the inference that that check was drawn by Marrash to reimburse Petrakian for the duty which he had paid, and that the sale by Marrash of the five packages of wheat and his act in drawing such check indicate that it was his wheat, and not Petrakian's. Now, if that was all the evidence in the case about this single transaction, it would not be as weighty as if there had been similar transactions previously occurring, shown by the evidence, and the government had offered evidence to that effect. That evidence is in substance this:

There was an entry of goods on October 8, 1906—that is, about two months before the importation in respect to which this proceeding is brought. That importation was made in the name of George Sara. It consisted of 12 packages of pistachio nuts and 10 packages of wheat, and they were numbered in a similar way to the others, with different numbers. In two of the packages of pistachio nuts there were found three tins of lace, and in one of the packages of wheat there was found a collection of handkerchiefs concealed in the same manner as has been already described. The customhouse broker who attended to the passing of the entries of this merchandise through the customhouse was Richards & Co. Weiss, a clerk of Richards & Co., testifies that

Marrash brought Sara to their office and introduced him as a man who wanted to make some importations, and that Marrash guaranteed the payment of the duties and of the broker's·charges. Gilbert, another clerk of Richards & Co., testifies that on October 8th, when this importation was made, Marrash called in the afternoon and asked if the entry had passed, and was told that it had not. Then he says that on the 9th, the next morning, he called twice, and was informed each time that the entry had not yet passed. Then he came again at 2 o'clock in the afternoon, asked again, and was told that the entry had passed.

Marrash then asked what packages had been sent to the public stores, and was informed that all the goods in the importation had been sent to the public stores. Thereupon Marrash withdrew, and in about an hour came back and said that he wanted to amend the entry, that he had discovered that the entry made was erroneous, and that there was some omission; and an amendment was made thereupon or afterwards, and it was based upon a letter which was postmarked from Watertown, N. Y., which the postal clerk says was postmarked as mailed before 2 o'clock on the 6th of October. This letter in the ordinary course of mail would reach here on the morning of the 7th, or if it was a Sunday or a holiday—which I believe it was—it was due on the morning of the 8th. And it was the information contained in that letter upon which Marrash claimed to have discovered the necessity for making an amendment of the papers so as to include this property, which had been packed in this manner which I have described.

Then there was a second importation of merchandise after that, on December 4th; and it appears in evidence that before this second importation of December 4th Marrash was arrested, and this importation on December 4th was made in the name of Petrakian. But the government claims that this importation was· also the property of Marrash, and that the first one by Sara was · also the property of Marrash. In this second entry of December 4th there were 4 packages of crushed wheat and 15 packages · of lentils, and in one of these packages of crushed wheat there were found 4 okes of needlework or ·lacework. The Arabian measure of weight, an oke, amounts to nearly 3 pounds, making perhaps 10 or 11 pounds of needlework. Now, out of that importation Marrash sold to Dibs, on December. 7th, 13 sacks of lentils and on December 6th, 5 packages of wheat. Then Petrakian drew his check in this case for $220.01 in payment of duty, and on the same day Marrash drew a check for that amount on his bank; so that you have two instances—this instance and the one which is involved in this suit—of Marrash drawing a check for the exact amount to·a cent for the duties which were paid by the persons in whose names these importations were made; and in all these instances you have the sale of Marrash, very shortly after the goods were received, of some of the goods in question, still marked by the same marks by which they were imported.

Now, gentlemen, it is for you to say, in view of these facts, whether these goods are to be forfeited to the government. If you think that Marrash was the real owner of them, then Petrakian's declaration that he was the owner, unexplained, justifies their forfeiture; for you may infer that he was acting as owner in order to assist Marrash in

defrauding the government. You can see that, if a man has been arrested or is suspected of having been guilty of smuggling in one instance, it would be for his advantage to have a friend to bring in the goods in which he was interested thereafter. So, in regard to a false invoice. This invoice did not contain originally any statement about these goods which were so concealed.

As I understand, in the case of the goods which were seized, in this proceeding there was an amendment of the invoice, subsequently made, in the handwriting of Mr. Maltus, before the invoice was actually filed. There is a provision of the statute permitting that to be done in case of any mistake—a very proper provision; and it is for you to say in this case whether the mistake, the omission to put the goods which were dutiable and packed in this way in the invoice, was deliberate and intentional, and for the purpose of aiding in the illegal introduction of these goods into this country without the payment of duty. If it was a mere mistake, and Mr. Petrakian, as soon as he found the error, proceeded to make correction in the manner provided by the statute, and if you think there was no original intention in the packing of these goods to get them into the country without paying duty, then you may find a verdict for him. The goods must not be taken away from him unless he has been guilty of an intent to defraud the revenues of the United States.

If, on the other hand, you think the original plan was to pack these goods so that they would get through the customhouse without detection, and that the omission to put them on the original invoice was with intent to defraud the customs authorities, and that this correction or amendment of the invoice was made because Petrakian made up his mind that he was going to be detected and for the sake of making a defense in the case, or because he had changed his mind about it, you should find a verdict for the government. If the original plan under which the goods were shipped and brought into this country, as shown by the manner in which they were packed and the manner in which the invoice was made up, shows a purpose on the part of Petrakian to smuggle the goods into this country, there should be a verdict for the government in this case.

Mr. King: I except to that portion of your honor's charge in which it is said that the goods were packed in a way which by casual observation would not show the fraud.

The Court: That is for the jury to say. There is evidence which, it is claimed by the government, shows that that was the purpose.

Mr. King: I ask your honor to charge that under section 5 of the customs administrative act it is not only the right, but the duty, of an importer, and in this case the claimant, Petrakian, upon receiving information which would bring about a change in the invoice, to take that to the collector. It was his duty. He was not absolved from it.

The Court: Yes.

Mr. King: And I ask your honor also to charge that under section 1 of the customs administrative act the holder of the bill of lading is deemed the owner of the merchandise; that if the evidence in this case shows, as it does, that Petrakian was the holder of the bills of

lading, he is deemed the owner, and that fact should be considered by the jury.

The Court: That is a piece of evidence you must consider on the question of ownership. The statute simply provides that the government may act on the faith of the bill of lading; but in my opinion it is not precluded from going behind the bill of lading.

Mr. King: Then I ask your honor to charge the jury that the jury should consider the fact that there is no direct evidence connecting Marrash and Petrakian in any of these importations, but that all the evidence is circumstantial and inferential.

The Court: Yes; I should think that that is so.

Mr. King: I ask your honor to charge the jury that under the fifth alleged cause of forfeiture they cannot find in favor of the government on the theory of conspiracy, unless the evidence shows that Petrakian did conspire with some one named in the information. There is nobody named there.

The Court: I think that is not an adequate allegation of conspiracy, and I will so charge.

Mr. King: And in that connection I ask your honor to charge the jury that on your honor's last ruling they shall disregard all evidence tending to establish a conspiracy to defraud the government.

The Court: I so charge as to the specific crime of conspiracy. If Mr. Petrakian is proved not to be the owner of the goods, that alone is sufficient ground to forfeit the goods.

Mr. Bird: I except to your honor's charge that in this case the evidence connecting Marrash with this transaction is only circumstantial. On the evidence of Mr. Dibs it was direct. I except to your honor's withdrawing that part of the fifth cause of forfeiture. I ask your honor to charge that the burden of proving that the importation of these goods was legal rests upon the claimant.

The Court: Yes; that is the rule, gentlemen, in cases of this class. The burden of proof is upon the claimant to establish that affirmatively.

Mr. Bird: I ask your honor to charge that the importation was illegal and false by a preponderance of evidence.

The Court: Refused.

Mr. King: I ask the court to charge that preponderance of evidence does not mean a preponderance of the number of witnesses.

The Court: Preponderance goes to the weight and sufficiency of the evidence, and not to the number of the witnesses.

The jury retired and returned a verdict for the government.