BEFORE THE THIRD DIVISION

APRIL 24, 1962

**No. 66718.**—S. Stern, Henry & Co. v. United States, protest 61/9247. (New York).—⬛—Approval of stipulation denied by order of JOHNSON, J., and RICHARDSON, J. The following memorandum accompanied the order:

RICHARDSON, Judge: This case presents a stipulation by and between the plaintiff, S. Stern, Henry & Co., a partnership, and the Assistant Attorney General in charge of the Customs Division, representing the United States, in which the parties stipulate and agree as follows, subject to the approval of the court:

IT IS STIPULATED AND AGREED by and between the plaintiff, a partnership, and the Assistant Attorney General, for the defendant, subject to the approval of the Court:

1. That the merchandise covered by the above protest consists of 750 sets of transistor radios and accessories, exported from Japan on or about December 25th, 1950, to New York on the S.S. YAMAWAKA MARU. The Special Customs Invoice covering the importation reflected price of $6.00 per unit, which included $5.50 per radio set, 30¢ per pair of earphones, and 20¢ per leather carrying case.

2. That on the date of exportation the imported merchandise was subject to a minimum export price as established by the International Trade Bureau of the

Ministry of International Trade and Industry (hereinafter referred to as MITI) as follows:

$11.00 per radio set, 30¢ per set of earphones, 20¢ per leather case, 18¢ per set of batteries.

3. That at the time of the importation herein involved it was the practice of the appraiser to appraise merchandise similar to that involved herein on the basis of the MITI check prices noted above.

4. That on January 19th, 1961, a consumption entry, with duty calculated on the invoice values, was tendered to the Entry Division of the Collector's office and assigned No. 901169.

5. That the Entry Division rejected the tender of the entry based upon the value indicated on the submitted Special Customs Invoice and required as conditions precedent to the acceptance of said entry that the entry reflect the MITI check prices noted above and that estimated duty computed at those MITI prices be deposited.

6. That the importer thereafter added to the originally tendered entered value so as to reflect the MITI check prices indicated above, noting on the entry papers that

"Collector has refused entry based on invoice prices which importer claims to be dutiable value and on which value importer originally offered entry. Since importer needs the merchandise he is entering, under protest, at the value demanded by the Collector"

that estimated duties computed at said MITI check prices were deposited on January 25, 1961, and that on said date, consumption entry No. 90169 [sic] was accepted by the Entry Division of the Collector's office and a permit for delivery issued.

7. That the protest be deemed submitted on this stipulation.

8. That Plaintiff shall have thirty days after submission of this case in which to file a brief and that Defendant shall have thirty days thereafter in which to file a reply brief.

When the above stipulation was presented, the court addressed certain questions to James B. Herzog, a partner in the plaintiff firm, and took the matter of approving the stipulation under advisement. The stipulation, aside from the issues to which it addresses itself with respect to the protest, raises certain questions with respect to the authority of one of the parties, the broker-partnership, S. Stern, Henry & Co., to appear before the Customs Court, and submit a stipulation and file briefs in support of its position, as a representative of the ultimate consignee and real party in interest, Amerex Trading Corp.

It appears that, as a matter of practice on some occasions in the past, the Customs Court has permitted a partnership firm, through one of the members of the firm, to submit the firm's case on a stipulation with the attorney for the Government, and, in some instances, such a privilege has not been accorded a partnership. In view of the importance of protecting the public against the unauthorized practice of law, a formal ruling on this matter seems desirable.

Rule 9 of the Rules of the United States Customs Court provides that: *"Parties may appear and manage their cases personally* or by attorney duly admitted under the rules of the court to practice at its bar." [Italics added.]

A party-plaintiff may be an individual, a corporation, or an association. The individual is the only party-plaintiff who can appear and manage his case *personally*. Neither a corporation nor a partnership can physically appear *personally*.

19 U.S.C.A., section 1641(a), shows clearly that individuals and partnerships have different status before the United States Treasury Department, in that it provides for the issuance of two kinds of licenses to customhouse brokers by the Secretary of the Treasury. One type of license is issued to individuals who are "citizens of the United States of good moral character." A second type of license is issued to business units, i.e., "corporations, associations, and partner-

ships." The section also provides that an individual person transacting business *pertaining to his own importations* does not even need a license, and that a business unit cannot receive or retain a customhouse broker's license unless it has at least two persons who hold individual customhouse brokers' licenses.

A partnership is an association of two or more persons to carry on as co-owners a business for profit. [Uniform Partnership Act, sec. 6(1); *McKinney's Consolidated Laws of New York (Annotated), vol. 38, sec. 10; Black's Law Dictionary (4th ed.), p. 1277.*]

An association is a business entity which cannot appear personally in a legal matter through one of its members any more than a corporation can appear personally through the chairman of its board of directors. Also, in the State of New York, where the plaintiff partnership, S. Stern, Henry & Co. has its being and maintains its office, associations are expressly prohibited from practicing law or rendering legal services.

No corporation or voluntary association shall practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor . . . render legal services of any kind in actions or proceedings of any nature or in any other way or manner . . . . [*McKinney's Consolidated Laws of New York (Annotated), vol. 39, part 1, sec. 280.*]

Under 19 U.S.C.A., section 1483, the holder of a bill of lading endorsed by the consignee is deemed the consignee thereof. 19 U.S.C.A., section 1501, permits the consignee or his agent to file an appeal for a reappraisement, and 19 U.S.C.A., section 1514, permits a consignee or the agent of the person paying the charge to file a protest. These provisions of title 19 of U.S.C.A. do not lift the prohibition against a partnership practicing law in the Customs Court.

It is generally accepted that when a corporation is a "party" it may not appear and manage its case even where it is a "consignee."

*Depew v. Wichita Ass'n of credit men,* 142 Kans. 403, 49 P. (2d) 1041 (1935), cert. denied, 297 U.S. 710 (1936).

*Bay County Bar Association v. Finance System, Inc.,* 345 Mich. 434, 76 N.W. (2d) 23 (1956).

*Marshall v. Inventor's Club, Inc.,* 117 N.E. (2d) 737 (Ohio C.P. 1953).

If there is no magic in the word "consignee" when a corporation is a broker and a party-plaintiff, so as to authorize it to function as an attorney on the behalf of an importer (or even on behalf of itself when it is the importer), then the word "consignee" has no magic so as to permit another business unit, a partnership, which is a broker and a party-plaintiff, to function as an attorney in behalf of itself or an importer.

The purpose in making the holder of an endorsed bill of lading the consignee in 19 U.S.C.A., section 1483, is to prevent frauds on the Government arising from collusive transfers. *Lafontan v. Elting* (D.C.N.Y. 1931), 54 F. (2d) 664, reversed on other grounds 58 F. (2d) 180, rehearing denied, 59 F. (2d) 204, certiorari denied, 53 S. Ct. 221, 287 U.S. 664, 77 L. ed. 573. This section simply provides that the Government may act on the faith of the bill of lading, but is not precluded from going behind it to show the facts, in order to determine the forfeitability of importations. *United States v. One Bag of Crushed Wheat* (D.C.N.Y. 1908), 166 F. 562. If the Government may go behind the bill of lading, certainly the court is not precluded from looking behind it when a lay partnership stands before the court representing the real party in interest. The record in this case clearly establishes, by the plaintiff's own admission, that the partnership, S. Stern, Henry & Co., which happens also to be a broker, is acting in a *representative* capacity for a third party, the ultimate consignee, Amerex Trading Corp. (R. 4). James B. Herzog stated that his partnership was "Func-

tioning only in a representative capacity" in this case (R. 4). See also section 31.3(a) of the Customs Regulations which provides that " 'Customhouse broker' includes any person who, *acting on behalf of others*, transacts customs business . . . ." [Italics added.] It is to be noted, however, that the regulations for transacting customs business before the Treasury Department do not control the practice of law before the United States Customs Court.

Rule 9 of the Customs Court permits parties to *appear personally and manage their cases*. It does not permit parties to *appear in a representative capacity and manage cases for others*, unless they are attorneys duly admitted under the rules of the court to practice at its bar.

Acting in a representative capacity in making court appearances, submitting a stipulation which joins or disposes of legal issues, and filing briefs which cite and interpret questions of law are functions which may only be performed by attorneys at law and constitute unauthorized practice of law when performed by nonattorneys, even though they may be lay specialists in customs matters.

. . . In many fields of endeavor laymen acquire specialized knowledge which is relevant to the practice of law in that area. Thus accountants may know a great deal about tax law and labor relations consultants much about labor law. A specialized area of competence does not, however, entitle these laymen to engage in the business of giving legal advice based on their knowledge of subjects. [*In re Roel*, 3 N.Y. (2d) 224, 144 N.E. (2d) 24, 28. See also *People* v. *Alfani*, 227 N.Y. 334.]

As pointed out above, volume 39, part 1, section 280 of McKinney's Consolidated Laws of New York (Annotated), makes it unlawful for a corporation or voluntary·association to practice law for any person, and section 270 of the same statute makes it unlawful for a natural person to practice law or appear for a person other than himself in a court of record in New York State.

James B. Herzog, a partner in the firm of S. Stern, Henry & Co., stated that the partnership would not receive a fee for its services in representing the ultimate consignee before the Customs Court (R. 5). The absence of consideration for legal services is irrelevant; unqualified giving of legal advice and performing legal services are just as harmful when free. A surgeon who performs an appendectomy or tonsillectomy without a fee is definitely practicing medicine. The character of the service and its relation to the public interest determines its classification—not whether compensation may be charged therefor.

*Grievance Committee* v. *Dean*, 190 S.W. (2d) 126, 129 (Tex. Civ. App. 1945) ; *New Jersey State Bar Association* v. *Northern New Jersey Mortgage Associates*, 22 N.J. 184 (1948), 123 A. (2d) 498 (1956). ·

. . . An unbending public policy wisely limits the practice of law to those specially trained and examined therein, subject to the control, regulation and discipline of the Courts and with the duty of loyalty to the client alone. In this day . . . the spirit of that public policy must be firmly administered by the Courts in the public welfare.

*Application of New York County Lawyers' Ass'n. In re Standard Tax & Management Corporation et al.*, 181 Misc. 632, 43 N.Y.S. (2d) 479, 481.

In view of the impropriety and illegality of a business unit engaging in the practice of law and the fact that the submission of a stipulation of the type involved in this case constitutes the practice of law and one of the signers is a nonlawyer acting in a representative capacity, the United States Customs Court does not approve the stipulation.

### DISSENTING MEMORANDUM

DONLON, Judge: The gravamen of the protest is that the collector required plaintiff to advance the entry value of merchandise and to pay estimated duty

as a condition of the immediate release of the goods to plaintiff. Such a protest does not state a cause of action.

The collector had no obligation to release the imported merchandise to plaintiff until duties, as estimated by the collector, had been paid.

There has been no liquidation as yet of the entry. There has not even been an appraisement. Presumably, plaintiff might have declined to amend its entry. Plaintiff did amend it, availing itself of that method of taking in the merchandise promptly. Having done this, plaintiff is in no position to complain of the consequence of its action.

Moreover, plaintiff has suffered no impairment of its rights. If, after appraisement, plaintiff believes that the merchandise has been overvalued, it may have its day in court to test that issue.

There is no cause of action which can be stipulated. The protest should be dismissed and the papers returned for appraisement of the merchandise.

I do not share the views of my colleagues as to the nature of a partnership; but my opinion, stated above, makes unnecessary discussion of that point.