UNITED STATES *v.* BOYD and another.

*(Circuit Court, S. D. New York.  June 12, 1885.)*

1. CUSTOMS DUTIES — PROSECUTION FOR ATTEMPTING TO ENTER GOODS FREE — RIGHT TO DUTIES, WHEN ACCRUES—ACT OF JUNE 22, 1874, § 12.
    As the right to duties accrues by the importation of merchandise with an intent to unlade, and immediately upon the importation the duties become a personal charge and debt upon the importer, the United States is deprived of duties, within the meaning of section 12, act June 22, 1874, (Supp. Rev. St. 79,) the moment it becomes entitled to them and they are withheld by the importer, and it is immaterial whether its officers retain the merchandise or not.
2. SAME—FRAUDULENT LETTER TO SECRETARY OF TREASURY.
    There is nothing in section 12 of the act of 1874 that limits its application, as regards fraudulent attempts to enter goods free, to proceedings at the custom-house only, and it is applicable to such attempts wherever made.

The defendants were indicted under section 12 of the act of June 22, 1874, for the fraudulent entry of 35 cases of imported plate-glass as free, by means of a false and fraudulent letter.  The government had previously procured from the defendants a large quantity of their own plate-glass, for immediate use in the construction of the United States court-house and post-office building at Philadelphia, at a discount from the domestic price equal to the rate of duties, under an agreement with the defendants that they might import, free of duty,

new glass to the same amount to replace that furnished to the government. The proofs tended to show that under this arrangement the defendants had previously imported, and entered free of duty, a much larger quantity of glass than sufficient to replace what they had thus supplied to the government. The indictment charged, and the proof showed, that the defendants addressed to the supervising architect at Washington the following letter:

"NEW YORK, May 29, 1884..

"*C. M. Bell, Esq., Supervising Architect, Treasury Depart.*—SIR: We are informed that the steamer Alaska is bringing us 35 cases of plate-glass, marked E. A. B., and numbered 1 to 35, imported to replace that furnished from stock for the U. S. court-house and post-office building at Philadelphia, Pa. This importation, and the 29 cases heretofore admitted, make 64 of the 81 cases furnished to said building, leaving a balance of 17 cases yet to be imported. We have the honor to request that the necessary instructions may be sent without delay to the collector of the port of New York to admit the above 35 cases free of duty, in the usual manner. The Alaska is expected to arrive to-morrow.     Very respectfully,     E. A. BOYD & SONS."

By means of said letter, exhibited to the treasury department, the following free permit was obtained:

"WASHINGTON, D. C., May 31, 1884.

"*Collector of Customs, New York*—SIR: By request of the supervising architect of the treasury department, dated this day, you are hereby authorized to admit to entry, free of duties and charges, thirty-five (35) cases plate-glass, marked 'E. A. B.,' numbered from 1 to 35, inclusive; said goods having been imported at your port in the Alaska for the use of the court-house and post-office building at Philadelphia.

"Very respectfully,     H. F. FRENCH, Acting Secretary."

Upon arrival of the glass this free permit was presented to the New York custom-house by the defendants' brokers, and an order obtained from the collector for the free delivery of the glass to the defendants. Afterwards, and before the glass could be delivered from the ship, the delivery was stayed, and the glass subsequently seized for forfeiture. The defendants were also indicted for the fraud, and were found guilty by the jury, whereupon a motion was made for a new trial.

*Elihu Root*, U. S. Atty., and *John Proctor Clarke*, Asst. U. S. Atty., for the United States.

*Stanley, Clarke & Smith*, for defendant.

Before WALLACE, BENEDICT, and BROWN, JJ.

WALLACE, J. This is a motion for a new trial. The defendants were convicted upon an indictment for a violation of section 12 of the act of congress of June 22, 1874, (Supp. Rev. St. 79,) enacting—

"That any owner, importer, consignee, agent, or other person who shall, with intent to defraud the revenue, make, or attempt to make, any entry of imported merchandise by means of any fraudulent or false invoices, affidavit, letter, or paper, or by means of any false statement, written or verbal, * * * by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof embraced or referred to in such invoice, affidavit, letter, paper, or statement,

* * * shall for each offense * * * be imprisoned for any time not exceeding two years," etc.

The evidence upon the trial authorized the jury to find that the defendants imported certain dutiable merchandise into the port of New York, and before it was unladen obtained a permit from the secretary of the treasury allowing it to be entered free of duty; that the permit was obtained by means of a letter written by them, the contents of which were intended to be and were actually communicated to the secretary of the treasury; and that this letter contained a false and fraudulent statement which was intended by the defendants to induce, and which did induce, the secretary of the treasury to direct the permit. It appeared, however, that before the merchandise was actually delivered to defendants by the officers of the customs it was ordered into a public store for examination by the collector, where it has ever since remained pending proceedings for a forfeiture. The counsel for the defendants requested the court to instruct the jury that the defendants should be acquitted because there was no evidence to show that the United States had been deprived of the lawful duties upon the goods. This request was refused, and its refusal presents the only serious question for consideration upon this motion.

No point was made upon the trial that the defendants had not made an entry of their merchandise, nor was it claimed that they had paid the duty. The contention for the defendants, therefore, rests upon the assumption that the United States is not deprived of duties upon imported merchandise unless it is deprived of the merchandise; in other words, that it is not deprived of duties so long as it possesses the means of securing and collecting them. This is not sound. The right to duties accrues by the importation of merchandise with an intent to unlade, and immediately upon the importation the duties become a personal charge and debt upon the importer. *U. S.* v. *Lyman,* 1 Mason, 482; *U. S.* v. *Aborn,* 3 Mason, 130; *Prince* v. *U. S.* 2 Gall. 204; *U. S.* v. *Vowell,* 5 Cranch, 368. The United States is deprived of duties the moment it becomes entitled to them and they are withheld by the importer. It is quite immaterial whether its officers retain the merchandise or not. If they do so, the United States may, perhaps, more effectually enforce its claim for duties than it could if the merchandise were delivered to the importer; but it is entitled to the duties whether it may be able to collect them out of the merchandise or not. An importer is not entitled to a permit for the delivery of dutiable goods until he has paid the duties. From the time the defendants retained the permit for the delivery of their goods the duties were withheld which accrued to the United States.

If it were necessary to decide the question, it might be held that it is not the meaning of the statute that the making of an entry of imported merchandise by a false statement, etc., is not an offense unless the United States is actually deprived of duties by means thereof. The qualifying phrase, "by means whereof the United States shall be

deprived of the lawful duties," applies as well to an attempt to make a false entry as to the making of the entry. The attempt is made a crime equally with the completed act. Now, it is apparent that the United States cannot be deprived of duties by a mere attempt to make fraudulent entry ; and there could be no conviction for such an attempt if it is necessary to prove that the United States has actually lost the duties by means thereof. For this reason it would seem that the qualifying words are used to describe the nature of the intent to defraud,—the character of the scheme,—and are not intended to make the result of the act or attempt an ingredient of the offense. If the act or attempt is to enter merchandise by a false statement, etc., of a character which is calculated to deprive the United States of duty, the statute is satisfied. The use of the future tense is consistent with this interpretation. If the statute had used the word "will" instead of "shall," no one would doubt that this would be the meaning. "Shall" and "will" are frequently used indiscriminately, and it is apparent from the reading of the whole section that "shall" was used here in the sense of "will" or "may." As is stated in Sedg. St. Const. Law: "The words 'may' and 'shall' have been a fertile source of difficulty in the interpretation of statute." Page 438. The decisions arising upon statutes in which "shall" has been construed to mean "may" and "may" to mean "shall" are too numerous and familiar to need citation.

The instruction requested for the defendants was properly refused, and the motion for a new trial is denied.

BROWN, J. One of the principal points urged in behalf of the defendant is that in making the entry of the goods in question as free, he did not make use of any false paper, or false statement, within the meaning of section 12 of the act of 1874; that the only paper made use of in making the free entry was the direction issued to the collector contained in the letter of the secretary of the treasury authorizing the free entry of the goods; and that the letter written by the defendant, or by his direction, to the supervising architect at Washington, designed to be shown, and which was shown, to the secretary of the treasury for the purpose of procuring his direction, although the statements in this letter were false, was a remote cause only, and was not made use of in making the free entry of the goods at the custom-house. The goods in question, being dutiable, could only come in as free, if designed for the use of the United States, upon the special order or direction of the secretary of the treasury. No entry of them as free could be made at the custom-house on the mere application of the defendant in the usual manner. Application for the free entry had necessarily to be made to the department at Washington, either there by the defendant directly, or through the custom-house here. Under these special circumstances, such an application there must be deemed one of the steps belonging to an attempt to enter the

goods, and consequently any false paper presented, and designed by the defendant to be presented, to the secretary of the treasury for the purpose of obtaining the order for the free entry, cannot be considered as a remote or indirect cause only, but as the direct procuring cause of the free entry. The subsequent acts of the collector in conformity with the direction of his superior in entering the goods as free, were merely a formal compliance with what had already been determined upon the defendant's application in Washington. In effect, the attempt to enter these goods as free was made at Washington, on application to the head of the department, and not, as in ordinary cases, upon application at the custom-house here.

There is nothing in section 12 of the act of 1874 that limits its application, as regards attempts to enter goods, to proceedings at the custom-house only. The real purpose of the act, to prevent and punish frauds, as well as its general language, require it to be applied to attempts to enter goods wherever make. Had the defendant in this case deposited the letter in question at the custom-house for the same purpose with which it was sent to Washington, and the letter had then been forwarded by the custom-house officials to the department at Washington for action, and the same order from the secretary subsequently received, and the same free permit thereupon issued, it would not have been doubted that the deposit of the letter at the custom-house was a part of the attempt to make a free entry of the goods. It is clearly immaterial that the defendant sent his letter directly to Washington for the purpose of influencing the action of the secretary of the treasury as to ordering á free permit. The attempt to make the entry began when this letter was forwarded for the purpose of influencing the secretary's action. The letter was so used, and its statements being false, the offense described by section 12 was committed.

See *U. S.* v. *Boyd, ante,* 690.