UNITED STATES v. TWENTY–FIVE PACKAGES OF PANAMA HATS
(CASTILLO, Claimant).

(Circuit Court of Appeals, Second Circuit. March 11, 1912.)

No. 180.

CUSTOMS DUTIES (§ 130*)—VIOLATION OF CUSTOMS LAWS—FORFEITURES—FALSE INVOICE.

The provision of Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), as amended by Act Aug. 5, 1909, c. 6, § 28, 36 Stat. 97 (U. S. Comp. St. Supp. 1909, p. 808), that "if any consignor, seller, owner, importer, consignee, agent, or other person or persons, shall enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, affidavit," etc., such merchandise shall be subject to forfeiture, is penal in character, and must be strictly construed, and is not applicable to goods until an entry of the same has been actually made or attempted. Goods in "general order" are not subject to forfeiture because of the filing of a false and fraudulent invoice by the foreign consignor, where it is not charged that the consignee participated in or knew of the false invoice, and he has made no attempt to enter the goods.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. § 130.*]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Libel by the United States against Twenty-Five Packages of Panama Hats; Maximo Castillo, claimant. Judgment for claimant, and libelant brings error. Affirmed.

An order was filed November 24, 1911, sustaining exceptions filed by the claimant to the amended libel of information, so far as said exceptions relate to the merchandise described in Schedule B and referred to in the libel under the general head of "Second Clause of Forfeiture." The libel alleges that the said merchandise described in Schedule B "is now in general order." As to all this merchandise the libel was finally dismissed and the government sues out a writ of error.

The following is the opinion of Hough, District Judge:

The libel alleges that the collector of the port of New York seized certain Panama hats which had been "unladen from the steamship on which [said hats] had been brought and imported into the United States." It further declares that such seizure was made "after due opportunity to enter [said hats] and account for the duties thereon had been had." It also asserts that said hats were "imported into the United States and entered and introduced into the commerce of the United States" from a foreign country by M. Castillo & Co., the owner and agent thereof (i. e., of said hats). The hats whose history is thus described are said to be forfeited to the United States under the provisions of subsection 9 of section 28 of the Tariff Act of 1909, because Castillo & Co. were engaged in the business of dealing in Panama hats, and imported hats through the collection district of New York, obtaining them from "various sellers and consignors * * * in foreign countries, and in order to introduce the said [hats] into the commerce of the United States the sellers or consignors" prepared and executed in foreign countries false and

---

fraudulent consular invoices, by reason whereof "said consignors or sellers
* * * were knowingly guilty of certain false and fraudulent practices,
* * * in that they attempted to introduce the said [hats] into the com-
merce of the United States upon said false or fraudulent consular invoices."
The hats aforesaid are and were at the time of seizure in "general order."

So far as this case is concerned, the operative words of subsection 9 are as
follows: "If any consignor * * * shall enter or introduce or attempt to
enter or introduce into the commerce of the United States any imported mer-
chandise by means of any fraudulent or false invoices * * * or shall be
guilty of any willful act or omission by means whereof the United States
* * * may be deprived of the lawful duties or any portion thereof accru-
ing upon the merchandise * * * such merchandise * * * shall be for-
feited * * * and such person or persons shall upon conviction be fined
* * * or be imprisoned * * * or both in the discretion of the court."
On this libel the inferences most favorable to the libelant are these: The
shipper of these hats executed fraudulent (i. e., undervalued) consular in-
voices and sent one or more of them to Castillo and also shipped the hats to
Castillo. Upon arrival in New York the goods went to general order, and
no effort has been made to enter them or otherwise take steps to procure
their delivery to Castillo or his assignee. The only paper or document relat-
ing to these hats, of which the collector has any personal knowledge, is the
retained copy of the consular invoice forwarded to him by the consul in ac-
cordance with law.

The government's proposition is that, by reason of the execution of the
fraudulent consular invoice in a foreign country the goods covered by that
invoice became subject to forfeiture the moment they had arrived within
the territorial jurisdiction of the United States. The libel does not allege
that Castillo ever did anything either in the way of preparing or executing
said false invoice or of procuring the execution of the same. It follows that
the forfeiture of the goods can only be upheld by maintaining that the act
of executing the false invoice plus the arrival of the goods in the United
States is enough to work a forfeiture.

It is admitted that this is a new question, arising from the introduction of
the words "consignor" and "seller" into the wording of a statute which has
been in substantial existence for many years. It is observable that this penal
statute lays down the same measure for a forfeiture of the goods and for
the conviction of a person. If any goods are subject to forfeiture, there must
be some person who is subject to fine or imprisonment or both. This requires
a very strict construction of the provisions of the statute. It also renders
unnecessary any pursuit of the thought that the goods themselves are the
subject of claim, or are (so to speak) tainted with fraud in such wise as to
become forfeited to the United States by a proceeding quasi in rem. It must
be asserted and proved that some person did an act obnoxious to the statute,
by reason of which the goods concerning which he acted became forfeit. This
amended libel does not allege any such acts against Castillo, but does seek
to allege them against Castillo's unknown consignors.

The question thereupon becomes this: Did the consignor, by the act of exe-
cuting the false invoice and shipping the goods in pursuance thereof, either
"enter or introduce or attempt to enter or introduce" the hats aforesaid "into
the commerce of the United States." The word "enter" is technical, and it
seems too clear for argument that no entry or attempted entry of these goods
has ever been made. U. S. v. A Cargo of Sugar, 3 Sawy. 46, Fed. Cas. No.
14,722. It is to me equally plain that the goods have not been introduced
into the commerce of the United States. It is true that they have been in-
troduced into the United States; that is to say, they are within the terri-
torial jurisdiction of our country. But that is not enough. See U. S. v. Four
Bottles (D. C.) 90 Fed. 720.

Not only must there be an introduction into the country, but an introduction
into the commerce of the country. The primary and simplest meaning of
commerce is an interchange of commodities, and it is impossible that goods
can be introduced into commerce until after they are out of general order.
If there has been neither entry nor introduction into commerce, neither has
there been any attempt at such entry or introduction, at all events on the

part of the consignor, who is the only person concerning whose acts the libel speaks.

It is to me conceivable that a libel of seizure might be drawn in which it could be set forth that the act of making, executing, and delivering a false consular invoice was but one step in a concerted attempt to make entry or introduction—to show, indeed, a conspiracy to defraud the revenue of which false invoice making was an overt act. There would be difficulties in the way of doing this, growing out of the limitations of criminal jurisdiction: for it is plain to me, as above noted, that, if there be not a criminal act, there can be no forfeited goods. But this is not such a libel, and it is therefore held that the mere execution of a false invoice, followed by the mere arrival in this country of the goods covered thereby, is not an entry or introduction of the goods, nor an attempt either to enter or introduce.

The exceptions are therefore sustained.

Henry A. Wise, U. S. Atty., and Carl E. Whitney, Asst. U. S. Atty.

Comstock & Washburn (Albert H. Washburn, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The question of practice involved in this review need not be considered because the claimant does not press the point and unites with the government in asking that the issue be determined on its merits. In his brief he says:

"He would welcome the final determination of the status of the general order goods, which have been in the government custody for a period approaching two years and necessarily have greatly deteriorated in condition."

There is no dispute upon the evidence, all the relevant facts are before the court and it is for the interest of both parties that the question be determined without further delay.

The contention on the part of the government is that the goods of a consignee against whom no charge of wrongdoing is made may be forfeited because of the fraud and undervaluation of the consignor, before they have entered into the commerce of the United States. It is not alleged that Castillo, the claimant and consignee, participated in or knew of the alleged false invoice. The parties charged with making the false and fraudulent invoice in a foreign country are the "consignors and sellers." Because of their fraud it is contended that the goods may be forfeited the moment they arrive in the United States and before they are entered or an attempt to enter them is made.

The statute under which this proceeding is instituted is penal in character and must be strictly construed. It is necessary for the government to prove that the goods were entered, or an attempt made to enter them, by means of a fraudulent or false invoice, affidavit, etc. There is no such proof. They have not been entered nor has any attempt been made to enter them.

They were subject to "general order," which the courts have defined as "an order whereby the collector allows the unlading of the goods and takes possession of them before entry of them is made by the individual owners or consignees." The Egypt (D. C.) 25 Fed. 320, at page 332. Until entry is actually made or attempted, the stat-

ute is inapplicable. The only goods here concerned were in "general order" and had not been entered when this suit was commenced.

The condition precedent to a forfeiture, viz., the entry or the attempt to enter, did not exist. The merchandise has never been introduced "into the commerce of the United States." It is not enough that it was brought within the jurisdiction of the United States. No presumption of an intent to enter can be predicated of that fact. It may well be that the owner of such merchandise, after holding it in "general order" until he can ascertain where the best market can be found, intends to ship it to a foreign country.

The undisputed fact that the merchandise was not entered and that no attempt to enter it into the commerce of the United States is sufficient to justify the dismissal of the libel as to Schedule B.

The entire case was carefully considered by Judge Hough and nothing further need be added to his opinion.

The order is affirmed.

WARD, Circuit Judge (dissenting). The amendment to the act of June 10, 1890, by subdivision 9 of section 28 of the act of August 5, 1909, was plainly intended to make the customs system more effective. It seems to me that no foreign consignor or seller could do more than has been done in this case in the way of an attempt to introduce goods into the commerce of the United States by means of a fraudulent invoice. He sold or consigned the goods to a resident of the United States and filed with the United States consul at Panama, to be forwarded to the collector of customs at New York, invoices in which they were deliberately undervalued. This, in my opinion, made the goods guilty and subject to forfeiture. If they are still the property of the foreign consignor the penalty seems reasonable. If they have been paid for by an innocent purchaser, the result appears hard, but the purpose of the law being to secure the government, I think the order should be reversed.